Okay, so our last case for argument, Smith v. Dart. Mr. Hines. Brace yourselves, Bill. Your Honors, and may it please the Court. Matthew Hines, on 7-11 license, to the Bloom Legal Clinic at Northwestern University School of Law, appointed counsel for appellant Donald A. Smith. Mr. Smith is a pro se pretrial detainee whose claims were prematurely and incorrectly dismissed at the court below. He asked this court to reverse the district court because the court below made two crucial missteps. First, when it inappropriately dismissed his potentially valid wage claims at the 1915A stage before the adversary process could begin, and second, when it wrongly granted what it deemed the defendant's uncontested motion to dismiss without reference to the details contained in his responsive pre-dismissal filings and without regard for the valid claims contained in his complaint. I find it helpful to separate between the wage claims that were dismissed at the 1915A stage and the conditions of confinement claims that were dismissed through 12-6. As an initial matter, this court has never categorically foreclosed the availability of the FLSA to a pretrial detainee. It's been mentioned in dicta, and it's been mentioned in the context of prisoners, though it should be noted that it hasn't been categorically foreclosed from prisoners either because there are sets of facts in which a prisoner may bring an FLSA claim. Because there are sets of facts that can be brought forth such that a prisoner or a pretrial detainee does have an FLSA claim available to them, 1915A is an inappropriate procedural mechanism to dispose of a case like Mr. Smith's. Mr. Smith was never given the opportunity to re-plead or to answer the kinds of concerns that are raised in the typical motion to dismiss. You know, applying FLSA to prison, that would destroy prison work. A prison, certainly the world, they can't afford to pay minimum wage and overtime and all that stuff to prisoners. Absolutely. They just cut out the program. I mean, no more work for these people. Well, Your Honor, I would suggest that the work might be available on a voluntary basis without the promise of some kind of benefit. And Mr. Smith, in our brief and below, was basically describing a situation in which he was offered pay and benefits for engaging in what looks like full-time employment, 40 to 50 hours a week of labor, doing the laundry of 13,000 inmates. And so this is the kind of situation where he says the reason he's working is because the food is inadequate, the water is not clean, and the commissary is overpriced. Well, that's your conditions argument. I think there's a distinction to be made between the inadequacy that comes along with not having the basic needs provided for you in the... Well, you're saying now he's forced to work because the conditions and the food and everything are so bad. Your Honor, I think the more important point in terms of his work is that when he's working, he's doing so in order to secure his basic needs, or at least that's one of the conditions that he's sort of putting forth. But I would also posit that there are other sets of circumstances in which a pretrial detainee might be more clearly within the confines of the FLSA. For example, if there's an external contractor sending work into the FLSA, they don't know what's happening here because... Yeah, but his main concern, as I understand it, was he given some sort of special treatment because he's a veteran? Yes, he's alleged that he is. Well, it seemed to me that was why he thought he was sort of compelled to take this job, because they threatened to take him out of that special category. Now, the way you described this prison, if they're getting special, my God, what is it like for the people who don't have that? Yes, Your Honor, I take your point. And I would also suggest that the benefits that he's being promised, especially considering that Mr. Smith has suggested that this work was promised to him, or was given to him on the promise that he would be given some pay and special opportunities, it looks a lot more like a job in the open market than a typical jail job where someone might... Would they do it in the laundry, you mean? Yes, because he's being told that if you can engage in this type of work, then you'll receive some kind of benefit. But the broader point is that these people, as pretrial detainees, cannot be compelled to work. And so if he's being induced to work, and it looks a lot like what's happening out in the open market, then he might have an FLSA claim. And the adversary process is a perfect place for these kinds of issues to come up, to help a judge make a decision about how the law should apply. This never reached... Well, the induction, it seems to me, induced, whatever you want to call it, is that he was going to lose something if he didn't. And that, I got the impression he's going to lose this veteran's, I'll call it a benefit. What was the benefit? As Mr. Smith describes it in his complaint, it's that he was separated from the general population, had some opportunity to proceed in a veteran's court or proceeding, and had access to this kind of work environment for pay. Well, he didn't get better food or water, did he? It doesn't sound like it, no, Your Honor. No, so he's eating with everybody else. Yes, Your Honor. And he didn't say anything about dinner, only breakfast and lunch. I would assume that he was eating dinner, but I think what he's trying to say here is that he didn't feel as though his meals were adequately nutritious, and so he sought to supplement his own diet, and the way that he did that was by engaging in employment labor. And so really the point here is that before the process of responding to a motion to dismiss and being permitted to amend his complaint or do something to make it clear to the court... But you're putting the cart before the horse, so you're saying that the prison degrades the conditions of these employees, of these detainees, so that it can force them to work at below a reasonable wage, right? Well, the answer to that is that they have to provide, you know, habitable conditions of living for these people, right? They can't degrade their work conditions, their living conditions in order to force them to work, right? So shouldn't the focus be on these conditions? Well, yes, and I'd like to talk about the conditions. I do want to point out, though, that I think there can be a distinction drawn between the inadequacy of not having your basic needs provided for by your custodial jail and being punished under the 14th Amendment. There might be a gap between the two. And so I think they are separate questions, but as to the conditions of confinement claims, what should have happened in the court below with the wage claims is they should have proceeded to the 12B6 process such that it could engage in the adversary process. And what happened here was that these conditions of confinement claims proceeded to that stage, but then the court missed things and failed to notice that there were valid claims contained in the complaint relating to the inadequacy of... So is your argument that she simply overlooked the fact that he made these supplementary filings which amplified what was in his original complaint? Is that the problem? No, Your Honor. She never mentioned those, right? It's a symptom of a larger problem, which is that the court failed to notice that there were valid claims there, not only in the complaint, but also in the amplified details. Well, I thought the problem was that she found the complaint to be inadequate. And instead of filing another complaint, he filed a supplementary statement, which fleshed it out. Now, apparently, she didn't notice that or ignored it? Well, before those subsequent filings after the dismissal, there were actually two other filings submitted, and both of those came five or six days. And she simply ignored them? They were not mentioned in the dismissal grants, and the dismissal grants called the defendant's response of filings. And so with those details especially, the complaint and those details alleges that he was exposed to a frigid cell, insect infestation, toxic water, and lack of access to basic exercise and hygiene. And this was enough to get him past the motion to dismiss phase. I'd like to reserve the remainder of my time for rebuttal, if I may. Thank you, Your Honor. Okay. Well, thank you very much. Ms. Huff? Good morning, Your Honors. May it please the Court? My name is Andrea Huff. I'm an assistant state's attorney with Cook County, appearing on behalf of Defendant Sheriff Durk. This Court should affirm all of the District Court's rulings below the 12B dismissal of the living conditions as it was granted without prejudice. But didn't the judge simply overlook his supplementary filings, which fleshed out the claims in his original complaint? Your Honor, I don't believe so. Right after the defendant filed its motion to dismiss, and the motion to dismiss was it can't properly answer the two sentences, which consisted of nothing more than a laundry list of general complaints against the jail, the way the complaint read after the 1915 review. So, after that, the plaintiff took it upon himself— I don't understand. It wasn't a motion for summary judgment. No, Your Honor. I just— So, he didn't have to present evidence, conduct discovery. No, not evidence. He gives this long list of alleged inadequate conditions, and the judge just didn't mention them? Well, Your Honor, I think that if you look at the first complaint after the 1915 review, there's only two sentences.  No, no. I'm talking about the complaint. These things he filed, like, you know, his addendum, and— The letter to Judge St. Eve? They're not labeled as complaints, but they're—yeah, well, amended motion in support of original complaint. Okay. Now, this amplifies the allegations. I don't think it does, Your Honor. Oh, of course they do. Look at all this list of stuff. But it's general conclusory statements. It's what? It's just general conclusory statements. Well, this is a pleading. What do you expect? But it doesn't talk about the plaintiff himself and how he was affected. He offers mere speculation and conclusory statements, which is not enough to put Defendant Dart on notice. And I'll just point out that Defendant Dart is named nowhere in the body, either of the original complaint or of the amended subsequent filings. So, Defendant Dart can't be on notice. You can't—I mean, this case has been—or this court has been very clear. You can't just name a defendant in the caption for purposes of placing them on notice and including them in the lawsuit. So— And he is, of course, a pro se. He is. But this district court gave a lot of deference to this plaintiff in two different detailed opinions. I don't understand. Her order is a couple of sentences. Well, her order granting the 12B6 is four pages, single space, Your Honor. No, no. The order of dismissal. The 41B? And as I see, there doesn't seem to be any reference to his supplementary filings. She references— As if she just hadn't seen them. She references that in the order, saying that he doesn't need to present evidence at that time. There is no reference to these filings. He's made these filings, these supplementary filings, and she doesn't discuss them. She doesn't mention them. Not in the 12B6 order or in the 41B order, but she does issue an order after she received those filings. One, destroying the evidence— Wait a minute. Is this the January 27th order? That was the ultimate dismissal order, but she issued an order in December, December 3rd. That's the 12B6, four page, single spaced. And it's back at 21— The December 16th order? No. The December 3rd order. The December 16th is a second order, which further clarifies her December 3rd order. But she did exactly what this court instructed in Donald, where she dismissed a complaint for failure to state sufficient claims, granting the plaintiff leave to file an amended complaint. Not only once, but twice. She set out all the deficiencies with the original complaint. She instructed him as to how to file a proper complaint that put the defendant on notice, and what the standards were to allege unconstitutional living conditions. Not only once did she do this, but she did this twice in clear detail. Well, look at some of the things she said in that order. The complaint states that there are mice and cockroaches, but he offers no basis for concluding that the degree of infestation is such as to create a constitutional claim. Now, what is he supposed to do when he receives that directive? If he looks at the last page of that, she's saying you have to put in dates of confinement. Living conditions claims are— I'm talking about the mice and the cockroaches. And I would refer the court to page 4, saying you have to plead a little bit more with particularity as to the dates. What exactly do you expect him to say about mice and cockroaches? Supposed to count the mice, count the cockroaches, or what? No. What's he supposed to do? He's supposed to plead more facts that there are cockroaches— Well, what are the more facts about the mice and the cockroaches? That there are cockroaches in my food, or there are— Well, he said that there are what? I don't know what his claims are with regards to the mice and the cockroaches. He just has them being present at the jail. I don't know how they affected him. They're present in his cell, right? He has both his cell— He's living with mice and cockroaches. He has his mice in his work conditions, and he has the cockroaches in his cell, is my understanding. Mice in the laundry room? Mice in the laundry room is what his allegations were. How many people are in this prison? In the laundry room business? No, the whole prison. Oh, in the prison, 9,600, Your Honor? 9,600? Approximately. That's a lot of laundry. I'm not going to be facetious about this, because it is— I'm from Indiana, you know? This thing's like, you know, Andersonville, by some comparisons. And I really wonder how much you have to say. Well, I just— First of all, he talks about a paucity of food. You get one egg and a little bit of cereal, and then the lunch, you don't get much. And then he didn't mention dinner. That was my concern. Right. And it seems—and he's got, in some sort of a privileged—he's not with the general population. He's in a voluntary program. Yeah, but that's for the laundry. But I'm talking about—he's a veteran and gets a special treatment of some kind, right? Yes. More honey-trained mice, I mean, for one thing. If you want to put a fine point on it, I bet you ten to one I could find mice in Concord's federal building right now. How long has he been in there? He's been in there since 2012, December of 2012. So where is he now? He's still in the jail, Your Honor. So he's awaiting trial? He's still awaiting trial. For three years? Yes, Your Honor. What's that about? That's his own accord. He didn't request a speedy trial, and I don't have any—I mean, we're a separate unit. I don't have any— Why wouldn't, in a case like this, why doesn't the judge—she's dealing with a pro se. She knows, she must know there are problems in the Cook County Jail with living conditions. Why doesn't she just have a little hearing and ask him and say to him, Look, you complained about mice and cockroaches. Now, would you please explain, you know, what's your concern? Are they biting you or what? What is it that bothers—I mean, nobody wants to live with mice and cockroaches, but could you be more specific about how the mice and the cockroaches are giving you trouble, right? Why wouldn't that be the realistic thing to do? Well, Your Honor, I would— Instead of all this legal stuff, right? If you toss this order, it talks about dates and this and the mice and cockroaches. Other than the fact that it's a lawsuit, why is it legally violated? Why is the law involved at all? Why is the law involved? I would just—I would point the Court to the last paragraphs of her four-page opinion that tell her that, you know, living conditions claims, you know, have to state facts regarding the living conditions to put the defendant on notice. No, she's not on the law. I'm the judgment. It sits there and listens to somebody beep and calls it in and says, tell me all about it. But he doesn't even put a year in here. I know, but I'm—listen, I'm on your side, kid, so keep talking. I'm not sure if this Court has any more questions regarding the living conditions. I would just say that please take note that much deference was given to the plaintiff in two orders, one on the 12b6 order, and the other when he moved to clarify the 12b6 order in the filing. So what would you expect him to say about the mice and cockroaches by way of amplification? That my living conditions in cell 4106 of the Cook County Jail during the period of blank to blank infested my food, infested my clothes, infested my laundry, just something to put the defendant on notice that somehow, not just the presence of cockroaches, but how it harmed him. That's all I want is to be on notice to properly respond to the complaint. And I think— Why didn't she tell him that? She did, twice. No, she didn't. She used all this legal stuff. I think— He doesn't have a lawyer to interpret this business about. She wanted him to explain how the cockroaches and the mice created a constitutional claim. She didn't tell him what a constitutional claim is, what the mice and cockroaches have to do in order to violate the Constitution, right? No, Your Honor, but she does say, please include dates in your amended complaint. Dates? The dates? He's been there for what, years? So he's supposed to have a calendar, and every day I was bitten by a mouse in 2012? But no, there were no dates ever pled to put the defendant on notice, and he's got a general name. So he should have said in March 1, 2012, this cockroach bit me, and on March 15, a mouse woke me up in the middle of the night, nibbling on my nose, right? That's what she means by dates? No, I think you have to plead with some factual specificity. Well, how are you supposed to know what the dates are when you're talking about a three-year period? Because he can at least start with when he started the confinement. Defendants don't know when he began his confinement. There are 9,600 inmates at the Clark County Jail. There's no record of when he entered the jail? That didn't come until the subsequent filings when he put me on notice of an ID number and the date in which he became incarcerated. Thank you, Your Honors. If you have no further questions. Thank you, Ms. Hoff. Mr. Hines? Your Honors, I'd like to address two brief issues. First, I'd like to point the Court's attention to the subsequent filings that Mr. Smith submitted in the wake of receipt of a motion to dismiss or for more definite statement. In the second of those filings, he said that he thought maybe the reason that the defendants were confused was that Donald Smith is a general name and he set forth who he was and why there might be other people out there with his name and why he thinks it might be confusing for the defendants. Ultimately, he wasn't making conclusory statements. If we look to the substance of what he set forth, he was describing what he was confronted with in the Cook County Jail. When were you appointed, by the way? We were appointed by this Court to address the pretrial detainees' access to wage claims and other claims in the wake of his appeal. So it was, I think, August of this past year, well after his case was dismissed. Was any effort made to file anything in the District Court? I'm sorry? Was any effort made to file anything in the District Court which made explicit what he was complaining about? Not on our behalf, Your Honor. This Court had certified these issues. Well, we've got jurisdiction in this area. No request was made to remand it down for purposes of amending the pleadings by the plaintiff? No, Your Honor, it wasn't. You think that would be a good idea? I'm not familiar exactly with the procedure of that, but what I will say is that Mr. Smith was initially denied in the Court and denied his request to appeal himself in form of papyrus, and this Court granted his right to appeal. You're very fussy about who appeals in the period. Does he have a trial date? Not that I'm aware of, Your Honor. What's he in jail for, by the way, just academically? Your Honor, as I understand it, he's being charged with armed habitual criminal under Illinois law. And he's worried about cockroaches. I would be too, Your Honor. It sounds like he said in his complaint there were mice and cockroaches in my food and in my cell. Who said I'll take you right downstairs? I bet you ten to one I could find mice and cockroaches here. Your Honor, I would suggest not in the courtroom. I don't want to be there either, so, you know. You showed him law school, right? Yes, sir, yes, Your Honor. Which he had to look forward to. Thank you, Your Honors. Okay, well, thank you very much, Mr. Hines. You certainly did a very good job, and we thank you for the Northwestern Septimia Foundation. And we thank Ms. Hough as well.